Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8311 | **DATE** | 12/19/2000 |
| **CASE TITLE** | Mercer vs. Moser Enterprises, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/10/2001 at 10:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff has persuaded the Court that issues of material fact preclude summary judgment at this time. Defendant's motion for summary judgment is denied. (22-1,20-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | DEC 20 2000 date docketed | 27 |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | DEC 20 AM 10: 12 | date mailed notice | |
| TP | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERLY MERCER,

    Plaintiff,

v.

MOSER ENTERPRISES, INC.,

    Defendant.

No. 98 C 8311
Judge James B. Zagel

**DOCKETED**

**DEC 2 0 2000**

## MEMORANDUM OPINION AND ORDER

Plaintiff Beverly Mercer (Mercer) worked as a truck driver for defendant Moser Enterprises, Inc. (Moser) from July 18, 1994 until her termination on January 19, 1996. Moser is a trucking company that operates exclusively as a mail carrier for the United States Post Office. During her entire tenure at Moser, plaintiff was the only female truck driver out of more than 100 drivers working at Moser's Montgomery, Illinois terminal.

Plaintiff was not subject to a hostile work environment at Moser. Nor does she claim she was sexually harassed, as has been the case in numerous other lawsuits in which female employees complained of unfair treatment in the traditionally male-dominated trucking industry. See, e.g., *Courtney v. Landair Transport*, 227 F.3d 559 (6th Cir. 2000); *Murry v. Dalworth Trucking Co.*, 1999 WL 151666 (N.D. Tex. 1999); *Stapp v. Overnite Transportation Co.*, 995 F. Supp. 1207 (D. Kansas 1998). Mercer's claim is simply that management at Moser did not want to employ women; that she was hired at a time when Moser was desperate for drivers; that ever since she started Moser has tried to make her quit; and that, not succeeding, they finally fired her.

1



Count I of plaintiff's complaint (brought pursuant to Title VII) alleges that she was discriminated against because of her gender in the following ways: (1) by defendant imposing a longer probationary period on plaintiff than that imposed on similarly situated males, (2) by defendant denying plaintiff full-time work hours when similarly situated males were given greater than full-time hours, (3) by denial of tractor-trailer training to plaintiff, though it was available for males, (4) by defendant suspending plaintiff for seven days for an offense for which it knew plaintiff was not at fault, (5) by defendant firing her.

Count II of plaintiff's complaint is a retaliation claim brought pursuant to 42 U.S.C. § 2000e-3(a). Mercer alleges that Moser retaliated against her by cutting her work hours in half after she filed an EEOC complaint on May 12, 1995. Plaintiff further claims that she was terminated on January 19, 1996 in retaliation for filing discrimination charges.

Moser Trucking asks me to grant its motion for summary judgment.

Summary judgment is appropriate only if the evidentiary materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Id.* at 1038.

## I. GENDER DISCRIMINATION

In order to survive defendant's motion for summary judgment for gender discrimination, Mercer must present evidence from which a jury could reasonably infer that Moser took adverse action against her because she was a woman. See *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). In the absence of an outright confession of discriminatory intent, plaintiff

2

may meet this burden: (1) through the *McDonnell Douglas* burden shifting analysis, or (2) through "circumstantial evidence, the kind that consists of ambiguous statements, suspicious timing . . . and other bits of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe*, 20 F.3d at 737.

A. Job Performance

As a preliminary matter, I must consider whether Mercer met Moser's legitimate job expectations. Mercer's employment record was not flawless. On the first route to which she was assigned, she was unable to load and unload mail containers from her truck without a great deal of difficulty. On one occasion, a loaded mail container fell off the lift of the truck, causing her to be delayed. Post offices along the route frequently complained about Mercer's timeliness. There is evidence, however, that Mercer's problem with timeliness may have been caused by defendant's failure to provide her with a properly functioning lift truck. Moser's Vice President, Don Schleining, acknowledged as much in his deposition.

The second blemish on Mercer's record is the seven-day suspension she received for pulling away from a post office loading dock prematurely. Here too, however, Mercer has proffered evidence to suggest that she was not at fault for the mishap.

In his deposition, Schleining characterized Mercer as a "substandard employee." But other supervisors, including dispatcher, Joe Lopez, would testify that she was a good employee who did her job and corrected her problems with timeliness. Moreover, although for purposes of summary judgment defendant argues that Mercer did not meet its legitimate expectations, defendant concedes that Mercer's termination was not performance-related. There is clearly a question of fact about whether Mercer met Moser's job expectations.

3

B. Alleged Adverse Employment Actions

   1. Reduction in Work Hours

Mercer says that she was subjected to gender discrimination because she received fewer and more unfavorable hours than male drivers. There is no question that over the course of her employment, Mercer worked significantly less than other male drivers. Defendant offers several purportedly legitimate reasons for reducing plaintiff's hours, but Mercer, in turn, has evidence to show that these reasons are a mere pretext for discrimination. There are numerous disputes of fact concerning the series of events which led to Mercer's reduction in hours.

First, some background information is in order. Of Moser's drivers, about 95% are licensed to operate tractor-trailer trucks. The remaining 5% are licensed to drive straight trucks. Moser straight truck drivers are only responsible for five routes: St. Charles, Earlville, Steward, Carol Stream, and Muncie/Kokomo. Plaintiff, who was not licensed to drive tractor-trailers, was hired to drive a straight truck on the St. Charles route.

When Mercer started at Moser in July 1994, she worked the St. Charles run. About **five** weeks into her employment, Mercer requested to be removed from this route. She was having difficulty unloading the mail because of equipment failure, and had developed a strained relationship with a local postmaster.

Moser granted Mercer's request and placed plaintiff on the Earlville route. On the Earlville route, Mercer again had difficulties loading and unloading her truck. There is disagreement between the parties as to whether she requested a second route change. Moser says she did; Mercer vehemently denies it.

4

Defendant next assigned plaintiff to the Muncie/Kokomo route, an assignment which did not require intensive physical labor. As the Muncie/Kokomo route had four full-time drivers, plaintiff only drove it one day per week. Plaintiff also worked the fifth route, Carol Stream.

Mercer says that throughout the course of her tenure at Moser, she was constantly requesting more hours.[1] Her requests were not granted; in fact, at times her hours were taken away from her and assigned to other drivers. In this respect, Mercer compares her situation to that of Israel Rosato who was hired as a part-time straight truck driver on September 17, 1994 (about two months after plaintiff was hired) and by October was averaging 90 hours per pay period, while plaintiff's top pay period was 61.8 hours. After three weeks on the job, Rosato was made a full-time driver. Mercer, by contrast, was forced to take part-time work on weekends to support herself.

There are other examples of disparity in treatment. During the increase in business over the 1994 holiday season, almost every male straight truck driver had an increase in hours over the prior pay period, while plaintiff's hours were halved. In May 1995, Mercer's driving time was cut from four days per week to one day per week; her hours were given to male employees.

Moser's former dispatcher, Joseph Lopez, supports Mercer's version of events. He testified that there was so much driving to do that male straight truck drivers were forced to drive extra hours they did not want during periods in which Mercer was available and was requesting work. Lopez testified about Moser's general policy of not hiring women; he says he has heard Don and Chrissy Schleining say "maybe a dozen times" that women truckers were "too much

---

[1] The parties appear to agree that this, at least, is true. In his deposition, Don Schleining said that plaintiff "complained a lot" and was "always asking for more hours."

5

trouble." He maintains that he was instructed by Don Schleining, and Moser Safety Director, Jim Dano, to cut Mercer's hours. In deposition he said:

> "They made it so miserable for her. They made me cut her hours from the straight truck run that I was doing and give it to one of the other two drivers who were doing another run. They didn't want to do it. They made him take it."
>
> "It got down to two days, to three days [per week], and it was really getting bad then. I had no choice. They made me do it. And Dano cut it. I wouldn't do it, and Dano did it once. The last cut was him."
>
> "They just didn't want her working for them."
>
> (Lopez Depo. at 31-32).

According to Lopez, Dano and other Moser supervisors referred to plaintiff as a "wacko," an "old bag," a "bitch" and a "stupid box of rocks." Other employees confirmed that Dano made derogatory comments about plaintiff, including calling her a "fucking bitch."

Moser attributes the reduction in plaintiff's hours to legitimate nondiscriminatory factors such as: (1) plaintiff's part-time status; (2) her requests to be removed from certain runs; and (3) changes in contract with the U.S. Postal Service, which reduced the number of driving hours required on certain runs.

Much of the disagreement in this case centers around whether Mercer was hired as a part-time or "as needed" driver. Moser said that it hired her for a part-time position and that their obligation was to fill the schedules of full-time drivers before providing hours for "as needed" drivers. Certain documents in the record, such as Moser's applicant's log, lend credence to plaintiff's assertion that she was hired as a full-time employee.[2] Even if she was a part-time

---

[2] In support of her contention that she was hired as a full-time driver, Mercer refers me to the applicant flow log used by Moser to record new hires. Next to some applicants' names there is a notation--"PT"--to signify that they were hired as part-time employees. No such notation appears next to Mercer's name.

6

driver, however, there remains the fact that Israel Rosato, a male part time driver, was given more hours and offered full-time employment after three weeks. Whether this was because he was a better worker or because Moser wanted to fire its only woman driver out of gender animus is a question involving credibility determinations which I cannot make at this time.

Defendants argue that Mercer herself limited her hours in a variety of ways. This appears to be at least partially true. By Mercer's own admission, she asked her supervisors not to schedule her on a *permanent* weekend run. (She preferred not to work these days because she occasionally did floral deliveries and attended dog shows on weekends, and because she went to church on Sunday mornings). Mercer says that she never refused to work weekends; she merely indicated a preference in favor of weekdays. She also points out that she was forced to obtain part-time work because Moser did not give her enough work to support herself.

In May 1995, Mercer's driving time was cut from four days per week to one day per week. Moser's proffered explanation for cutting plaintiff's hours is that on April 15, 1995, the U.S. Postal Service amended its contract, forcing Moser to reduce the hours that each driver worked on the Carol Stream route. Full-time drivers subsequently requested that they be permitted to return to a full-time schedule. Since, Moser says, these workers had "a higher priority than plaintiff," Moser gave the full-time drivers the hours that Mercer had worked on the Carol Stream route. Mercer again responds that she too was a full-time driver; she also provides some evidence that the 1995 contract change did not reduce the number of hours that Moser drivers worked.

It is undisputed that at the same time Mercer was asking for more hours, Moser hired other straight truck drivers. Don Schleining testified that Moser had an opening for a full-time

7

straight truck driver position in November 1995. He said that Moser posted a job availability notice on the bulletin board outside the dispatch office, but that Mercer did not apply for this position. Schleining testified that "[plaintiff] has–never showed any interest as far as upgrading her status to full-time employment." He added that if she had wanted full-time employment, all she had to do was contact the personnel secretary to change to full time. Mercer says that she never saw such a notice, and that, in any event, she would not have considered it necessary to apply for a job at a company at which she already worked and at which she constantly requested more hours. In light of Mercer's testimony that she was constantly asking for more hours, a reasonable jury could find Mercer's account more credible.

In mid-January 1996, plaintiff's hours were eliminated altogether and she was laid off. She was the only part-time straight truck driver laid off during the post-holiday season. The reasons Moser gave for the termination were: (1) her inability to drive a tractor-trailer; (2) her difficulties in driving the straight truck routes involving strenuous physical labor; (3) the lack of available hours on the Carol Stream and Muncie/Kokomo routes. The parties agree that she was not fired for poor work performance. (Schleining Depo. at 50).

Mercer disputes that there was a large drop-off in business in January 1996 and provides some documentation to that effect. When plaintiff was laid off, another part-time straight truck driver who was a male was kept on. Within 90 days of laying her off, Mercer hired other straight truck drivers.

Defendant's explanations for why it cut plaintiff's hours certainly weaken plaintiff's case; but they do not kill it. There remain numerous questions of fact about why defendant reduced and eventually eliminated plaintiff's driving hours.

### 2. 120-Day Probationary Period

Mercer was given a 120-day probationary period when hired.[3] She says that similarly situated male colleagues hired at or around the same time were given a 90-day probationary period. Mercer supports this allegation with two pieces of evidence.

First, she says that Rick Rosato and Tom Neely, two male drivers hired after her, told her that they had 90-day probationary periods. The record does not contain affidavits from Rosato or Neely, merely Mercer's account of what they told her. This evidence is inadmissible hearsay.

Mercer's second argument fares better. She directs my attention to Moser's employee handbook in effect at the time she was hired. The handbook does indeed state that the probationary period for new employees is 90 days. Mercer has an explanation. It says that a longer, 120-day probation period was imposed upon all new drivers by Moser's Safety Director in late 1993, and that Moser had not yet changed the employee manual when Mercer was hired in July 1994. Defendant has documents which show that other employees signed statements acknowledging a 120 probation, but the earliest of these acknowledgments is dated September 7, 1995, nearly fourteen months after plaintiff was hired, and four months after plaintiff complained of the probationary period in her May 12, 1995 charge of discrimination.

There is a question of fact as to whether Mercer, the only woman truck driver out of 100 Moser drivers, was given a longer probationary period than her male colleagues.

---

[3] According to Mercer, when she was given the job, Moser Safety Director Jim Dano told her that the supervisors had talked it over, that she might be able to "pull it off" in 90 days, but that they would give her 120 days just in case.

### 3. Tractor-Trailer Training

Plaintiff contends that Moser provided tractor-trailer training to its male straight truck drivers to enable them to apply for Class A commercial driver's licenses. As evidence of this allegation, Moser relies upon an affidavit by Dennis Wilke, a former Moser employee, and her own purported eyewitness account of such training.

If called to testify, Dennis Wilke would state that a Moser dispatcher, Dale Augustine, offered him tractor-trailer training. (He did not actually receive any training because he declined the offer). Mercer says that she personally observed Jim Dano, on at least two occasions, training newly hired drivers. Dano allegedly told Mercer that he was too busy to teach her.

According to Moser's Vice President, Dan Schleining, Moser has never offered its Class B straight truck drivers training to upgrade their driver's licenses to Class A tractor-trailer licenses. At most, defendant says, certain drivers received unsanctioned, surreptitious training by other drivers, and Moser's management would have disciplined them had it known. Plaintiff's own witness, Joseph Lopez, testified that any training that he received had to be done "on the sneak." Another driver, Bob Jones, could testify that Moser supervisors refused his request to train him for a Class A license.

Plaintiff's evidence in support of her allegation about denial of training is weak. But again, the decision is one involving determinations of credibility, and that must be left for the jury.

10

4. Discrimination in Discipline

The fourth alleged adverse employment action was Moser's decision to suspend plaintiff for seven days. After reviewing the evidence, I find that plaintiff cannot prove that she was disciplined more harshly than similarly situated male colleagues.

On April 21, 1995, plaintiff was suspended for driving away from the Carol Stream post office dock without permission while a postal worker was attempting to close the rear door of the truck. Moser's Vice President received a telephone call from the U.S. Postal Service facility in Carol Stream demanding reassurance that Mercer would be disciplined. Moser's Safety Director suspended plaintiff for seven days.

Mercer concedes that it was the U.S. Postal Service--not defendant Moser--who issued the order to discipline her. She nonetheless maintains that the length of her suspension--seven days--was motivated by gender animus. Plaintiff compares her suspension to that of another employee, Paul Djuric. Earlier that year, Djuric drove away from a post office loading dock with a postal employee still inside his trailer, causing the employee to jump from a moving vehicle and injure himself. The U.S. Postal Service suspended Djuric for fourteen days.

Djuric's safety infraction was more serious than plaintiff's infraction. Accordingly, he was suspended for twice as long. Plaintiff's comparison of her suspension with Djuric's suspension is the only evidence she cites of gender discrimination in discipline at Moser. No reasonable jury could find, on such flimsy evidence, that Moser's decision to suspend Mercer for seven days constituted gender discrimination.

## II. RETALIATION

Mercer was engaging in protected behavior when she filed her complaint against Moser with the EEOC. The question before me is whether plaintiff's evidence about Moser's reduction in her work hours is sufficient to prove the causation element of a prima facie case of retaliation under 42 U.S.C. §2000e-3(a).

Plaintiff filed her complaint with the EEOC on **May 8, 1995.** EEOC records indicate that the charge of discrimination was transmitted to defendant on May 12, 1995. Nine days later, plaintiff's hours were cut by more than half. She was left with one day of work per week. By contrast, during the same period, the work hours increased for each of the other straight truck drivers with the exception of one. During the following pay period (6/4/95 to 6/18/95), Mercer's hours remained very low (about 13 hours per week); all but one of the other drivers were working well in excess of 40 hours per week. In fact, says plaintiff, one of the drivers worked more than 60 hours per week on the same route which plaintiff had been removed from immediately following the filing of her EEOC charge.

The reduction of hours nine days after the EEOC claim was filed was certainly on the heels of the protected activity. See *Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1015 (7th Cir. 1997)(suspicious timing may constitute evidence to support a claim of discrimination). Was this a mere coincidence? Whether or not Moser would have taken the same action "but for" the protected expression depends solely upon which party you find more credible.

12

## III. DEFENDANT'S AFFIRMATIVE DEFENSE

There is yet another factual dispute with respect to Moser's affirmative defense of failure to mitigate damages. Plaintiff says that she has fulfilled the obligation imposed upon her by 42 U.S.C. § 2000e-5(g) to make diligent efforts to secure employment. Mercer claims to have applied for 80 full-time jobs in the period from her layoff to December 1999. She says that she currently works nearly full time for Lincoln Bus Company.

Defendant does not believe that plaintiff has diligently looked for work. Mercer admitted during deposition that she has not updated her resume in four years, and that it had been two months since she looked for a job. Defendant's expert, John Britt, opines that the market for experienced truck drivers is hot, and plaintiff could find a full-time job within three days if she wanted one. Given this evidence, plaintiff's case for damages does appear to be poor. But I cannot unequivocally credit Britt's assertions. This is, after all, a case in which the central complaint is that women are unwelcome in the trucking industry.

## IV. CONCLUSION

Plaintiff has persuaded me that issues of material fact preclude summary judgment at this time. Defendant's motion for summary judgment is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: December 19, 2000

13